**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

In re:                                        )
                                              )
Joe R. Whatley, Jr., solely in his capacity   )
as the WD Trustee of the WD Trust,            )
                                              )        **ORDER DENYING MOTION**
                                              )        **TO QUASH**
              Plaintiff,                      )
                                              )
       vs.                                    )
                                              )
Canadian Pacific Railway Limited, et al.,     )
                                              )        Case No.:  1:16-cv-74
              Defendants.                     )
_____

     Before the Court is Intervenor World Fuel Services' Motion to Quash Defendants' Notice

of Fed. R. Civ. P. 30(b)(6) Deposition of World Fuel Services. See Doc. No. 311. For the reasons

stated below, this motion is denied.

## I.        BACKGROUND

     The litigation underlying this dispute stems from a 2013 train derailment in Lac-

Mégantic, Quebec, Canada. See Doc. No. 1. Plaintiff Joe. R. Whatley, Jr.  ("Whatley") brought

claims against Canadian Pacific Railway Limited, Canadian Pacific Railway Company, Soo Line

Corporation, and Soo Line Railroad Company (collectively, "CP") that were acquired by

assignment from two entities, World Fuel Services, Corp. ("World Fuel") and Irving Oil Ltd.

("Irving"). See id.

     The process of obtaining discovery from these assignors has involved much motion

practice. CP reached an agreement with Irving regarding the production of documents in

September 2020. See Doc. No. 235, p. 1, n. 1.  Thus, the remaining discovery issues concern

only World Fuel.

The history of this dispute is outlined below.

A.      **March 2020 Subpoena and Related Motion Practice in the Southern District of Florida**

CP first[1] tried to obtain discovery from the assignors, including World Fuel, through Whatley himself. In October 2019, CP moved this Court for an order compelling Whatley to produce discovery from his assignors. See Doc. No.  135. The Court ultimately denied this request on December 19, 2019, suggesting that CP themselves use third-party discovery mechanisms to obtain the necessary information from World Fuel and Irving. See Doc. No. 143. The Court also encouraged Whatley to assist CP "in any way possible to obtain other relevant information from Assignors." See id.

At the time that order was issued, Whatley had apparently served World Fuel with a subpoena in relation to a case before the United States Bankruptcy Court for the District of Maine. See Doc. No. 134-6, p. 15 (describing subpoena issued). As far as the undersigned is aware, World Fuel never produced any documents in response to that subpoena, despite an order granting Whatley's Motion to Compel by default after World Fuel failed to respond. See Doc. No. 197-3.

---

[1] While the lawsuit was filed on April 12, 2016, judgment was entered in favor of CP and the case dismissed on March 24, 2017. See Doc. Nos. 1, 92, 93. This judgment was reversed, and the case remanded, by the Eighth Circuit Court of Appeals on September 14, 2018. See Doc. No. 99. CP's petition for a writ of certiorari to the United States Supreme Court was denied on June 3, 2019. See Doc. No.  115. The litigation was subsequently restarted in the district court and a scheduling order was issued on June 12, 2019. See Doc. No.  117. The instant discovery dispute dates from the latter half of 2019. In light of this history, the Court does not find World Fuel's complaint that CP "waited nearly four years after this litigation was filed to seek discovery" from World Fuel persuasive.

Presumably in response to World Fuel's failure to respond to Whatley's subpoena, CP served their own subpoena on World Fuel on March 11[2], 2020. See Doc. No. 197, ¶ 4. Having received no documents by April 10, 2020, CP filed a motion to compel compliance with the subpoena in the Southern District of Florida. Id. at ¶ 5.

CP's motion was ultimately granted by Judge Torres on May 22, 2020. See Doc. No. 197-1 (Order on Motion to Compel issued by United States Magistrate Judge Edwin G. Torres in case number 1:20-mj-20993-RNS). Dismissing World Fuel's objections that compliance would be unduly burdensome, Judge Torres noted that World Fuel failed to object or otherwise respond to CP's subpoena when it was served, thus waiving its objections, and further, failed to support its claims that compliance would be onerous with any affidavit or evidence of its alleged financial costs. Id. at 7-8. He ordered World Fuel to produce the requested documents by June 21, 2020. Id. at 8.

World Fuel produced no documents by June 21, and CP moved for sanctions in the Southern District of Florida on June 30, 2020. See Doc. No. 197, ¶ 7. Throughout July, World Fuel began producing some documents. Id. at ¶ 8.

**B.    Judge Wilson's Order on Summary Judgment and Resulting Discovery Impasse**

During this time, the parties' cross-motions for summary judgment in the underlying case were pending before Judge Wilson. See Doc. Nos. 157, 173. On August 6, 2020, CP filed a motion citing the new evidence that World Fuel had finally produced the month before in response to its March 2020 subpoena. See Doc. No. 202. CP argued that the new evidence

---

[2] While the subpoena was dated February 27, 2020, it was not issued until March 11, 2020. As such, the Court refers to it as the "March 2020 subpoena" throughout the remainder of this Order.

3

supported their arguments in the pending summary judgment motions and asked for leave to file supplemental briefing. See id. However, Judge Wilson entered his order on summary judgment later that same day, and denied CP's request to supplement their motion with the new discovery. See Doc. No. 207. Judge Wilson's order on summary judgment resolved many of the claims in the case. See Doc. No. 203.

Less than two weeks later, Judge Torres denied CP's motion for sanctions, citing among other reasons CP's failure to comply with a local rule requiring them to confer before filing their motion, and the fact that World Fuel by that point had produced additional documents in July. See Whatley, Jr. v. World Fuel Services Corporation, 1:20-cv-20993, Case No. 20-20993-MC-SCOLA/TORRES (S.D. Fla. Aug. 19, 2020), p. 9-11. Judge Torres also noted the recent ruling on summary judgment by Judge Wilson, and questioned whether it mooted the remaining dispute. See id.

At this point, discovery reached an impasse, as World Fuel maintained that its production under the March 2020 subpoena was mooted by Judge Wilson's order. In the meantime, the case was transferred from Judge Wilson to Judge Traynor, and both parties filed Motions for Reconsideration of Judge Wilson's order shortly thereafter. See Doc. Nos. 208, 216, 227.

On September 18, 2020, CP moved for an order confirming their right to obtain discovery pursuant to the March 2020 subpoena, and World Fuel moved to intervene in order to oppose CP's motion. See Doc. Nos. 235, 246. On October 28, 2020, the undersigned granted CP's motion and ordered World Fuel to produce the remaining documents responsive to the March 2020 subpoena without delay. See Doc. No. 254.

C.      **Judge Traynor's December 2020 Rulings**

On December 10, 2020, Judge Traynor issued two orders of importance to the instant dispute. See Doc. Nos. 278, 279. First, he denied the parties' cross-motions for reconsideration and CP's motion for clarification. See Doc. No. 278. He declined to reconsider Judge Wilson's conclusion that he could not rule on CP's arguments relating to insurance and settlement. See id. at 4. Declaring that World Fuel's outstanding discovery was relevant to the remaining undecided issues, Judge Traynor declared that the parties would be allowed to file additional summary judgment briefing on the "narrow issues of whether (1) previous insurance coverage and settlement agreement bar the claims here; (2) the collateral source doctrine applies in this case; and (3) the Plaintiff is seeking impermissible contribution or non-contractual indemnification." Id. He went on to deny CP's request to reconsider Judge Wilson's conclusions regarding tariffs, to deny CP's motion for clarification, and to deny Plaintiff's request to reconsider Judge Wilson's finding that Irving's claims were time-barred. Id. at 4-6. Judge Traynor also laid out a schedule for the additional briefing on summary judgment, directing the parties to notify the Court immediately "upon completion of the outstanding [World Fuel] discovery." Id. at 7.

In his second ruling issued on December 10, Judge Traynor denied World Fuel's appeal of the undersigned's order declaring that its discovery obligations regarding the March 2020 subpoena were not moot. See Doc. No. 279. Noting that the outstanding discovery was necessary for the forthcoming motions for summary judgment authorized by his contemporaneous order, and citing World Fuel's previous failures to respond to the subpoena despite Judge Torres's order, Judge Traynor affirmed the undersigned's decision ordering World Fuel to immediately comply with the March 2020 subpoena. Id. at 6. He noted any failure by World Fuel to promptly comply with this Court's order may result in a finding of contempt. Id.

5

**D.    Discovery Developments Since December 2020**

Since Judge Traynor's December orders, discovery has proceeded – painfully. In its first production of any sort since July, World Fuel provided documents in response to the subpoena on November 22, 2020 and a revised privilege log on November 19, 2020. See Doc. Nos. 297, ¶ 3, and 266-4. It produced some documents on December 11, 2020, and another privilege log on December 15, 2020. See Doc. No.  297, ¶ 5. World Fuel made more productions on January 20, 2021, January 22, 2021, February 10, 2021, February 19, 2021, and February 25, 2021. See Doc. No. 297, ¶ 3. It provided another privilege log on February 24, 2021. See id. at ¶ 5. It also provided a revised version of this log on March 22, 2021, with updated privilege descriptions, and an index of individuals listed on the privilege log together with their titles. See Doc. Nos. 299-3, 299-4.

During this time, the undersigned convened multiple status conferences regarding disputes over the production and other discovery-related matters, such as protective orders. See, e.g., Doc. No. 275, 281, 287, 295.

**E.    The Instant Dispute – Rule 30(b)(6) Subpoena of World Fuel**

On March 16, 2021, CP served a subpoena to testify at a Rule 30(b)(6) deposition upon World Fuel. See Doc. No. 311-1. An attached notice laid out seven topics for the deposition. See id. at p. 3. The third topic directly referenced the March 2020 subpoena, stating "The subject matters listed in the 22 document requests listed in the subpoena duces tecum dated Feb. 27, 2020 previously served on You in this case by CP."  Id.

After meeting and conferring regarding this request, the parties requested a status conference on the subject of World Fuel's forthcoming motion to quash the subpoena. See Doc. No. 302. The undersigned duly held a status conference and set out an expedited briefing

schedule for briefing of the motion to quash and a deadline for completion of the deposition. <u>See</u> Doc. No. 310.

On April 12, 2021, World Fuel served its Motion to Quash. <u>See</u> Doc. No. 311. On April 19, CP filed their Response. <u>See</u> Doc. No. 312. On April 22, World Fuel filed its Reply. <u>See</u> Doc. No. 313. The matter is now fully briefed and ripe for the Court's review.

## II.     GOVERNING LAW

### A.     Scope of Discovery and the Court's Discretion

Rule 26(b)(1) sets out the scope of discovery:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The scope of discovery under Rule 26(b) is extremely broad. <u>Colonial Funding Network, Inc. v. Genuine Builders, Inc.</u>, 326 F.R.D. 206, 211 (D.S.D. 2018), citing 8 Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2007, 36–37 (1970). "The reason for the broad scope of discovery is that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" <u>United States v. Johnson</u>, 2020 WL 948083, at *2 (D.N.D. Feb. 26, 2020), quoting 8 Wright & Miller, § 2007, 39. However, fishing expeditions are not to be permitted; some threshold showing of relevancy must be made. <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. Dec. 14, 1992).

In general, a district court's discretion is particularly broad as to discovery matters. <u>Carr v. Anheuser-Busch Companies, Inc.</u>, 495 Fed. Appx. 757, 767 (8th Cir. 2012), citing <u>Cook v. Kartridg Pak Co.</u>, 840 F.2d 602 (8th Cir. Mar. 1, 1988). Lastly, as with all the Federal Rules of Civil Procedure, the rules governing discovery "should be construed. . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

**B.    Rule 30(b)(6) Depositions**

The particular discovery mechanism at issue here is an upcoming Rule 30(b)(6) deposition of World Fuel's corporate representative. Federal Rule 30(b)(6) outlines the procedure for depositions of organizations, including nonparty organizations:

> **(6) Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

As is apparent from its face, Rule 30(b)(6) imposes duties on both the requesting party and the responding party. The requesting party must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." <u>Murphy v. Kmart Corp.</u>, 255 F.R.D. 497, 504 (D.S.D. 2009), quoting <u>Prokosch v. Catalina Lighting, Inc.</u>, 193 F.R.D. 633, 638 (D. Minn. 2000). In turn, the responding party must then "make a conscientious good-faith endeavor to designate the persons having knowledge of

the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." Murphy, 255 F.R.D. at 504-505, quoting Prokosch, 193 F.R.D. at 638.

### C.   Motions to Quash Under Rule 45

Federal Rule of Civil Procedure 45 provides the procedure for serving subpoenas on non-parties. See Fed. R. Civ. P. 45(a) and (b). Rule 45 also provides a means to resist subpoenas. On timely motion, a district court must quash or modify a subpoena that fails to allow a reasonable time for compliance, requires a person to comply beyond the geographical limits specified in Rule 45(c), requires disclosure of privileged matter, or subjects a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i-iv).

The person seeking to quash a subpoena "bears the burden to demonstrate that compliance would be unreasonable or oppressive." Cody v. City of St. Louis, 2018 WL 5634010, at *3 (E.D. Mo. Oct. 31, 2018), quoting Enviropak Corp. v. Zenfinity Capital, LLC, 2014 WL 4715384, at *3 (E.D. Mo. Sept. 22, 2014). This burden cannot be satisfied with conclusory statements. Reed v. Envirotech Remediation Servs., Inc., 2010 WL 11470123, at *2 (D. Minn. July 20, 2010), citing Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999). In the context of showing undue burden, "the respondent may also challenge whether the documents are relevant." Reed, 2010 WL 11470123, at *2, citing Miscellaneous Docket Matter No. 1, 197 F.3d at 925.

In analyzing whether a subpoena constitutes  an "undue burden," the Court may consider "(1) relevance of the information requested; (2) the need of the party for production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden

imposed." In re Levaquin Products Liab. Litig., 2010 WL 4867407, at *2 (D. Minn. Nov. 9, 2010), citing Televisa, S.A. de C.V. v. Univision Commc'ns, Inc., No. 05–3444, 2008 WL 4951213, at *2 (C.D.Cal. Nov. 17, 2008). See also Gregerson v. Vilana Fin., Inc., 2006 WL 8443418, at *2 (D. Minn. Dec. 6, 2006) (giving factors), citing In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 495 (E.D. Pa. 2005). The Court may also consider the fact that the subpoena is directed at a nonparty. Gregorson, 2006 WL 8443418, at *2, citing In Re Auto Refinishing Paint, 229 F.R.D. at 495.

## III.   ANALYSIS

In its Motion to Quash, World Fuel raises three broad issues. First, it contends that CP's proposed deposition topics are irrelevant to the remaining issues in the case. Next, World Fuel argues that several of CP's topics constitute "discovery on discovery" which World Fuel argues is impermissible in the context of this litigation. Lastly, it objects that the proposed topics are unduly burdensome and disproportionate to the needs of the case.

### A.   Relevance

The parties' disputes regarding relevance fall into two broad categories: whether World Fuel has standing to raise relevance, and, if so, whether the deposition topics at issue here are in fact relevant.[3]

---

[3] As noted below, Defendants contend that any relevance objection is only applicable in the context of an undue burden analysis, whereas World Fuel addresses relevance first and the remainder of the burden analysis separately. It is clear to the Court that relevance or lack thereof is a facet of undue burden. See, e.g., Reed, 2010 WL 11470123, at *2 ("But in the context of burdensomeness, the respondent may also challenge whether the documents are relevant,") citing Miscellaneous Docket Matter No. 1, 197 F.3d at 925 and Pointer v. Dart, 417 F.3d 819, 821 (8th Cir. 2005) (holding that a subpoena must seek relevant matters). Since Defendants also follow the structure of World Fuel's argument and address relevance first, the Court will do the same,

### 1.      Whether World Fuel Has Standing to Assert Relevancy Objections

CP claim that World Fuel lacks standing to assert relevance objections on several grounds. First, they cite law to the effect that a non-party such as World Fuel lacks standing as a matter of law to "challenge relevance on claims and defenses to which it is not privy." <u>See</u> Doc. No. 312, p. 10. The authority cited by CP is dated and not binding upon this Court, and the undersigned is not persuaded to follow it.

CP next argues that a court may *only* evaluate relevance objections made by a non-party in the context of an undue burden analysis. CP then reaches the conclusion that, since Judge Torres already rejected World Fuel's claims of undue burden, World Fuel lacks standing to raise its relevance objections at this juncture.

While CP makes a compelling argument, the Court is not necessarily convinced that Judge Torres's May 2020 Order denying World Fuel's claims of undue burden has the effect of permanently foreclosing any relevancy arguments related to the instant deposition notice. As such, the undersigned will consider World Fuel's arguments on the matter, as laid out below.

### 2.      Whether the Deposition Topics are Relevant

The parties appear to agree that the initial burden is on CP to show that the deposition topics are relevant, and then the burden shifts to World Fuel to contest relevancy. <u>See</u> Doc. No. 312, p. 14; Doc. No. 314, p. 2; see also <u>Murphy v. Kmart Corp.</u>, 255 F.R.D. 497, 502 (D.S.D. 2009) (concluding that the initial burden to show that the information sought in a Rule 30(b)(6) is relevant falls upon the requesting party, and then shifts to the objecting party to show that the information is not discoverable).

---

with the remainder of the burden analysis following below at page 19.

Notably, in its initial motion, World Fuel does not actually address any of the topics in the 30(b)(6) subpoena notice. It starts by stating broadly that none of the subpoena topics are relevant to the issues remaining to the litigation. But rather than actually discussing the topics, World Fuel frames its argument by declaring that CP has identified only two issues justifying discovery – the applicability of the collateral source rule and the applicability of certain tariffs – and then arguing that neither of *these* issues justify further discovery. Its argument is made utterly without reference to the subpoena notice that it is attempting to quash.

In response, CP seizes upon World Fuel's failure to discuss "even a single deposition topic" and accuse it of improperly leaving it to the Court to review each of the 28 topics for relevancy. They ask the undersigned to "decline World Fuel's invitation to do the work World Fuel was required to but has not shouldered." See Doc. No. 312, p. 2.

The Court is inclined to agree with CP's criticism and will organize its analysis with reference to the topics of the subpoena. Happily, World Fuel addresses the individual topics in its reply.

### a.   Topics 1, 2, 6, and 7

These topics seek information regarding the steps World Fuel took to respond to the March 2020 subpoena and to preserve documents related to the litigation, as well as the identities of individuals listed as in-house counsel on privilege logs. See Doc. No.  311-1, p. 3. They are addressed in the "Discovery on Discovery" section below at page 18.

### b.   Topic 3

Topic 3 consists of "the subject matters listed in the 22 document requests listed in the subpoena duces tecum dated Feb. 27, 2020, previously served on You in this case by CP." See Doc. No. 311-1, p. 3.

In defense of this topic, CP simply asserts that Judge Traynor found these document requests to be relevant and proportional and ordered their production in his December 10, 2020 order, and therefore this topic is relevant. The Court finds this argument reasonable, more than meeting CP's threshold burden to show the relevance of Topic 3.

World Fuel disagrees, contending that Judge Traynor's orders had no such effect. It seeks to diminish the effect of his order, arguing that his ruling affirming this Court's ruling "dealt with a different subpoena, at a different time, and under different circumstances." <u>See</u> Doc. No. 314, p. 3. As best as the undersigned can parse their claim, World Fuel appears to argue that, while its duty to produce documents in response to the 22 document requests in the March 2020 subpoena is firmly established by the December order, the same is not necessarily true with regards to preparation of a corporate witness in regards to the same 22 document requests now.

World Fuel makes an intriguing argument. But upon close consideration, the undersigned is not convinced. World Fuel establishes a distinction between the 22 document requests in March and now, but it does not establish a difference – at least, not one rising to the level of legal significance. In attempting to do so, World Fuel writes the following.

> However, Judge Traynor's ruling (Dkt. No. 279)—affirming Judge Hochhalter's order requiring WFS to produce documents responsive to the document subpoena (Dkt. No. 254)—dealt with a different subpoena, at a different time, and under different circumstances. Judge Hochhalter's underlying order found:
>
> • That discovery was not moot because "Judge Wilson's [summary judgment] order [was] subject to change" and "evidence from World Fuel [was] relevant to the pending reconsideration motions," and
>
> • That "World Fuel already had the chance to litigate compliance with the [document] subpoena. Not only did they have the right to file an objection initially—which they failed to do—but they made arguments regarding undue burden before Judge Torres, who officially rejected their arguments and ordered them to comply." (Dkt. No. 254 at 7.)

> None of this is true with respect to the Rule 30(b)(6) deposition subpoena. The summary judgment order is no longer subject to change (see Dkt. No. 278), there are no pending motions for reconsideration, WFS has not waived any objections, and WFS has not had its arguments of undue burden resolved by the Court.

See Doc. No. 314, p. 3.

The undersigned agrees with World Fuel that, at the time of this Court's October 28, 2020 Order directing World Fuel to comply with the March 2020 subpoena and holding "the requested discovery is relevant," there was indeed a pending motion for reconsideration. See Doc. No. 254, p. 7. The pending motion for reconsideration has been subsequently denied by Judge Traynor and, as such, Judge Wilson's summary judgment order "is no longer subject to change," at least not in the immediate future. So far, so good.

The problem for World Fuel is this: Judge Traynor denied the pending motion for reconsideration *while simultaneously* upholding the undersigned's order that discovery was not moot. The summary judgment motion was "no longer subject to change" upon entry of Docket Number 278, and Judge Traynor upheld World Fuel's discovery obligation at Docket Number 279. In other words, Judge Traynor's discovery order was entered *in the context of* the denial of the motion for reconsideration.

In the above-quoted text, World Fuel seems to be trying to create the impression that the discovery order was upheld sometime *before* the motions for reconsideration were denied, but of course this was not the case. The reason was simple: as set out at length above, Judge Traynor denied the motions for reconsideration, but explicitly invited further summary judgment briefing on three topics, finding that the discovery sought by the March 2020 subpoena was necessary to resolve the dispute. See Doc. No. 279, p. 6.

The Court is persuaded by CP's arguments that Judge Traynor's order upholding the undersigned's finding of relevance extends to and validates the subpoena topics in the present dispute. Unfortunately for World Fuel, in its Reply, it fails to argue anything beyond "Judge Traynor's order doesn't apply," declining to actually *discuss* the 22 topics or explain how or why any of them might not be relevant now in some more specific way.  Particularly in light of the broad scope of discovery mandated by Rule 26(b)(1), World Fuel fails to persuade this Court that Topic 3 is irrelevant.

c.      **Topic 4**

Topic 4 reads: "The reasons why You classified the Crude Oil that was the subject of the Lac Megantic Derailment, as well as other crude oil trans-loaded in New Town, North Dakota, as Class 3, Packing Group III." (Doc. No. 311-1, p. 3, footnote omitted).

CP claims this information is relevant because it relates to whether World Fuel is an "innocent party" for purposes of the collateral source rule. CP argues the collateral source rule does not apply because World Fuel was not an "innocent party." Rather, CP takes the position World Fuel's misclassification of the oil as Packing Group III was negligent, intentional, fraudulent, or all three, citing an email produced in response to the March 2020 subpoena which they claim supports their position. As such, CP contends an inquiry into the misclassification and motivation is highly relevant. They also point out that Judge Traynor specifically called for further discovery and summary judgment briefing on the collateral source issue.

World Fuel addresses the applicability of the collateral source rule in both its initial motion and its reply, taking the position the question of whether it applies is a strictly legal one, insufficient to justify further discovery. They point out that CP claims in other briefing that no material fact disputes remain affecting this issue, that the misclassification of the oil is already

established between the parties, and that Judge Wilson held that the negligent misclassification "in no way caused" the derailment or destruction of the cargo. They deny that CP has articulated any basis for finding that World Fuel was not an "innocent party," characterizing CP's attempts to inquire further about this issue as a fishing expedition.

The Court is persuaded the collateral source doctrine and the innocent party exception issues justify inclusion of Topic 4 at a 30(b)(6) deposition. Earlier claims of a lack of outstanding material fact on this issue were made while World Fuel resisted compliance with the March 2020 subpoena. On August 6, 2020, CP attempted to bring what it claimed was newly-produced evidence of World Fuel's *intentional* misclassification of the oil before Judge Wilson, prior to summary judgment. See Doc. Nos. 202, 202-1. Evidence of claimed intentional misclassification of crude oil, such as instructing employees to classify the oil based on tank car lease provisions (as opposed to classification based on properties of the oil) reasonably warrants inquiry. See Doc. No. 202-3, p. 8. Inquiry into this topic is not a fishing expedition.

Lastly, Judge Traynor explicitly allowed further briefing on the remaining collateral source related issues because "there is outstanding discovery relevant to the remaining undecided issues that WFS has failed (repeatedly) to provide to the CP." Doc. No. 278, p. 4. Topic 4 is relevant.

### d.   Topic 5

Topic 5 reads : "[t]he reasons why You entered into a $110 million USD settlement to settle and resolve claims asserted against You regarding the Lac Megantic Derailment as well as any other settlement agreement stemming from the Lac Megantic Derailment." (Doc. No. 311-1, p. 3, footnote omitted).

CP's arguments for the relevance of Topic 5 are similar to their arguments for the relevance of Topic 4, if somewhat less specific. Citing their position that World Fuel is not an "innocent party" for purposes of the collateral source doctrine, they write, "[i]f the basis of World Fuel's $110 million settlement included World Fuel's negligent, intentional or fraudulent misclassification of the Crude Oil or other conduct establishing that World Fuel was not an innocent party, such testimony is relevant to the collateral source argument." See Doc. No. 312, p. 13. In reply, World Fuel invokes the same arguments it presents for Topic 4 and writes "World Fuel's reasons for settling all claims related to the derailment six years ago are not relevant to the applicability of a purported "innocent party" exception to the collateral source rule." (Doc. No. 314, p. 4).

The undersigned finds that, on the grounds that this topic may shed light on the applicability of the collateral source rule, CP has made a showing of relevancy for Topic 5. Further, World Fuel has failed to demonstrate that this information is not discoverable.  Topic 5 is relevant.

### 3.     Conclusion as to Relevance

The Court finds that CP has made a sufficient showing of relevance to justify the inclusion of these topics at a Rule 30(b)(6) deposition, and that World Fuel has failed in its attempt to show that the information is not discoverable. As noted in the Court's discussion of undue burden, below starting at page 19, this finding is incorporated into that analysis as well.

### B.     Whether "Discovery on Discovery" Topics Are Appropriate

Topics 1, 2, 6, and 7 in CP's list of topics for the deposition concern the discovery process itself. See Doc. No.  311-1, p. 3. Topic 1 inquires about the searches and procedures which World Fuel has used to respond to the March, 2020 subpoena. Id. Topic 2 concerns "any

17

and all efforts taken" to "fully comply with all orders compelling full compliance" with the March 2020 subpoena. Id. Topic 6 concerns efforts made by World Fuel to preserve documents related to the assigned claims. Id. Lastly, Topic 7 asks for the positions and duties of in-house counsel appearing on privilege logs.

### 1.    Arguments of the Parties

World Fuel objects to these four topics as irrelevant to the remaining substantive issues in the case, and unwarranted in light of what it contends is its full cooperation in the discovery process. It casts CP's complaints about discovery wrongdoing as mere speculation, and argues that the inclusion of these four topics in the deposition would needlessly waste resources.

CP responds that they have more than made the necessary showing to justify "discovery on discovery," laying out for the Court's consideration a lengthy history of the discovery dispute from Judge Torres's order in May 2020 compelling compliance with the subpoena up until the present.

In reply, World Fuel points out that many of CP's complaints of discovery abuse concern incidents of its conduct that occurred before the undersigned's order declaring that discovery must proceed. It also objects to some of CP's specific contentions about discovery failures.

### 2.    Analysis

While there is not a large amount of caselaw from district courts within the Eighth Circuit dealing with the topic of "discovery on discovery," the general trend appears to be that such inquiries should not be permitted lightly. As one court advises: "[R]equests for such meta-discovery should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum. A party must provide an adequate factual basis for its belief that discovery on discovery is warranted." Catlin

v. Wal-Mart Stores, Inc., 2016 WL 7974070, at *1 (D. Minn. Sept. 22, 2016), quoting Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A., 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016). See also Korbel v. Extendicare Health Servs., Inc., 2015 WL 13651194, at *15 (D. Minn. Jan. 22, 2015) (noting that the cases cited by the parties indicate that meta-discovery is only warranted when there is a "colorable factual basis.") (citations omitted).

Here, the Court finds that CP has shown an adequate factual basis justifying the inclusion of these topics. This discovery process has been unusually convoluted and it appears that many issues are unresolved. World Fuel's statements regarding its discovery process over the past year do appear to have changed (e.g., it apparently represented to Judge Torres that production in response to the March 2020 subpoena was complete after it produced only 54 documents in July 2020). See Doc. No. 310, ¶ 7. While there are undoubtedly innocent explanations for the confusion between the parties, the undersigned finds that testimony on these topics from a knowledgeable representative at the upcoming deposition can only serve to speed resolution of the outstanding issues. Topics 1, 2, 6, and 7 are appropriate subjects of inquiry.

### C.   Whether the 30(b)(6) Deposition as Noticed Constitutes an Undue Burden

#### 1.   Arguments of the Parties

In its Motion to Quash, World Fuel protests that it would be "incredibly expensive and burdensome" to prepare a witness for deposition on the topics requested, at one point citing the monetary figure of "tens of thousands of dollars." Characterizing the topics as "laughably broad," World Fuel objects generally to the number of deposition topics (28), the timeframe covered by the topics (approximately three and a half years), and the lapse of time since the timeframe at issue (the passage of eight years since the derailment). It also complains that many of the employees with personal knowledge of the derailment have left the company.

In response, CP points out that World Fuel failed to actually cite any specific deposition topics to explain how they are objectionable, and has further failed to substantiate its vague claims of expense and burden in any way. Lastly, CP argues that any burden in time or expense, i.e., "tens of thousands of dollars," pale[s] in comparison to the $123 million claim CP is currently facing from World Fuel's assignee, making the preparation of a Rule 30(b)(6) deponent "proportional to the needs of the case" as mandated by Rule 26(b)(1).

2.      **Analysis**

Both World Fuel and CP agree that the six-factor undue burden analysis commonly used by district courts in the Eighth Circuit is the appropriate framework for this determination. As stated by the court in In re Levaquin Products Liab. Litig., the factors for determining if an undue burden exist are as follows:

> (1) relevance of the information requested; (2) the need of the party for production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed.

In re Levaquin Products Liab. Litig., 2010 WL 4867407, at *2 (D. Minn. Nov. 9, 2010), citing Televisa, S.A. de C.V. v. Univision Comme'ns, Inc., No. 05–3444, 2008 WL 4951213, at *2 (C.D.Cal. Nov. 17, 2008). These factors are addressed sequentially below.

a.      **Relevance of the information requested**

As analyzed above at p. 17, the Court finds this information to be relevant.

b.      **The need of the party for the production**

The relevance of these documents to the existing litigation is discussed at length above. Beyond relevance, the Court notes that World Fuel is an assignor of the claims at issue and has

20

unique access to the underlying discovery, which CP has been trying to obtain directly from them for over a year and through other mechanisms for much longer. See, e.g., Doc. No. 135.

### c.    The breadth of the request for production

World Fuel describes all 28 topics as "clearly overbroad," and some of the topics as "laughably overbroad," but it does not do much to detail for the Court *which* topics are overbroad, or why. In its Reply, at least, it cites four specific topics which it finds objectionable. (Doc. No. 314, p. 7). These topics are all drawn from the original document requests in the March 2020 subpoena, which were incorporated by reference into Topic 3 of the topic list for the Rule 30(b)(6) deposition, and are listed below according to their original numbering:

> REQUEST NO. 1: Identify and produce all policies, procedures, documents, and communications relating to the transportation by rail, sampling, testing, classification, or labelling of crude oil, including the Crude Oil involved in the Derailment.
>
> REQUEST NO. 2: Identify and produce all communications exchanged between the World Fuel Entities and third parties, including but not limited to any governmental agency in the United States or Canada, Irving Oil, or the New Town, North Dakota transloader (defined as SST (Stroebel Starostka Transfer) in paragraph 1.36 of Exhibit 2), regarding the classification of crude oil, Bakken formation crude oil, or the Crude Oil involved in the Derailment.
>
> REQUEST NO. 6: Identify and produce all policies and procedures relating to the World Fuel Entities shipment of hazardous materials, including but not limited to Bakken crude oil.
>
> REQUEST NO. 10: Identify and produce all documents and communications relating to Your knowledge of the properties and characteristics of Bakken crude oil.

See Doc. No. 311-2, p. 6-7.

World Fuel describes these topics as "broader sets of information than a corporate representative could reasonably be prepared to testify on." The undersigned is most sympathetic to their contention with respect to Request No. 1. All "policies, procedures, documents and

communications," relating not only to the classification of crude oil, but also its transport by rail, testing, sampling, etc., appears to encompass a great deal of World Fuel's activities related to crude oil. On the other hand, the relevant time period is relatively brief (three and a half years). Though broad, the Court does not find this topic to be unreasonably so.

The other topics listed by World Fuel are less obviously problematic. Request No. 2 only concerns communications (as opposed to policies, procedures, documents, and communications). While "third parties" is broad, the topic of the communications is reasonably limited; the Court interprets this topic to only cover communications concerning the classification of crude oil, the classification of Bakken formation crude oil, and the classification of the crude oil involved in the derailment.  Request No. 6 is less objectionable, being reasonably limited to "policies and procedures" on a specific topic. Lastly, Request No. 10, while addressing the broad category of "documents *and* communications," is limited to those relating to a particular subject – not just crude oil, but Bakken crude oil. As such, World Fuel has failed to show that these topics are overly broad.

### d.      The time period covered by the subpoena

The time period at issue for the 22 incorporated document requests ranges from January 1, 2011 to July 6, 2014. See Doc. No. 311-2, p. 5. Despite World Fuel's protests, nothing about that time period (or the seven to ten years that have elapsed since then) constitutes evidence of an undue burden. The case World Fuel cites in support of its claim to the contrary has the unfortunate effect of making CP's subpoena look reasonable by comparison. World Fuel calls the Court's attention to Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co., where a court found topics in a 30(b)(6) deposition notice facially unreasonable when the notice called for information about insurance coverage over a 70-year period across the entire United States.

<u>Catholic Mut. Relief Soc'y of Am.</u>, 2019 WL 4897159, at *3 (D. Minn. Jan. 9, 2019). In addressing the temporal scope, the court narrowed the covered period to a seven-year-range, from 1964 to 1971. <u>Id.</u> at 4. World Fuel's complaints about the burden of preparing a representative on a timeframe half as lengthy, and forty years more recent, are not bolstered by comparison.

**e.**     **Particularity with which the subpoena describes the requested production**

World Fuel's contentions on this topic are conclusory. The mere fact CP by reference incorporates a document subpoena does not defeat reasonable particularity.

The undersigned finds the strongest criticism of these topics is that they encompass a broad swath of specific information, as discussed at length above at page 21 (paragraph c, "Breadth" of the request for production). World Fuel's arguments on the topic of reasonable particularity are not convincing.

**f.**     **Burden imposed**

World Fuel argues CP's subpoena imposes an unfair burden, that preparing a witness for CP's subpoena would take "weeks, if not months, and costs tens of thousands of dollars," making it "incredibly expensive and burdensome."

CP responds that World Fuel fails to provide any declaration or affidavit substantiating its vague claims of burden, and that World Fuel should have been on notice that it would be subject to discovery relating to its assigned claims. Lastly, it contends that any quantifiable burden that could be established would pale in comparison to the $123 million claim being brought against CP by World Fuel's assignee.

While sympathetic to the costs and inconvenience World Fuel must incur to prepare a witness, these costs are part of the price of litigation. In the words of one court: "[T]he burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored." Prokosch v. Catalina Lighting, Inc. 193 F.R.D. 633, 639 (D. Minn. 2000). Sometimes, such a burden is a necessary cost of litigation, even when non-parties are involved:

> Compliance with a subpoena necessarily involves some measure of burden to the producing party. . . *The court will not deny discovery simply because compliance will inconvenience a nonparty or subject it to some expense.* A nonparty 'objecting to a subpoena has the burden to show that compliance would cause undue burden, typically by presenting an affidavit or other evidentiary proof of the time and expense involved in responding to the subpoena.'

Lawson v. Spirit AeroSystems, Inc., 2020 WL 2101251, at *10 (D. Kan. Apr. 30, 2020) (emphasis added) (citations omitted).

The Court further notes World Fuel fails to provide "any affidavit or evidentiary proof" of the allegedly incredible amounts it must spend to prepare a witness for this deposition. (World Fuel faced a similar criticism from Judge Torres in May 2020, who noted with disapproval its failure to provide an affidavit or declaration in support of the $50,000 it would allegedly spend to comply with CP's subpoena. See Doc. No. 197-1, p. 8.)

World Fuel fails to support its claims of burden with evidentiary proof, and fails to *describe* its burden beyond general terms. It is unclear how preparation of a witness would "consume weeks or months of significant resources." This statement is simply too vague to justify the quashing of this subpoena. Similarly unavailing is World Fuel's claim that no witness is available with personal knowledge of the derailment. See Prokosch v. Catalina Lighting, Inc.,

24

193 F.R.D. 633, 638 (D. Minn. 2000) (Rule 30(b)(6) "makes plain its preference that a party not subvert the beneficial purposes of the Rule by *simply incanting that no witness is available* who personally has direct knowledge concerning all of the areas of inquiry.") (emphasis added) (citations omitted). World Fuel's complaints of burden are not persuasive.

       **3.**      **Conclusion as to Undue Burden**

     The showing necessary to quash a subpoena on undue burden grounds "cannot be satisfied with conclusory statements." <u>Reed v. Envirotech Remediation Servs., Inc.</u>, 2010 WL 11470123, at \*2 (D. Minn. July 20, 2010), citing <u>Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2</u>, 197 F.3d 922, 925 (8th Cir. 1999). World Fuel offers little more than conclusory statements. World Fuel's burden may be onerous, but is not undue.

## III.     CONCLUSION

     The Court appreciates World Fuel is not a party to this litigation. Yet, World Fuel *is* assignor of claims against CP for more than $120 million. The likely cost to prepare a witness for deposition pales in comparison. For reasons above, the 30(b)(6) topics are relevant and proportional to the needs of the case. <u>See</u> Fed. R. Civ. P. 26(b)(1). World Fuel's arguments to the contrary are vague, conclusory, or in disregard of Judge Traynor's directive. The Motion to Quash (Doc. No. 311) is **DENIED**.  However, in recognition of a need to prepare a witness, and in light of the fact the deposition deadline is May 14, 2021, the Court hereby extends the deadline for its completion to June 10, 2021.

      **IT IS SO ORDERED**.

     Dated this 10th day of May, 2021.

                                      */s/  Clare R. Hochhalter*
                                       Clare R. Hochhalter
                                       United States Magistrate Judge