IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Joe R. Whatley, Jr., solely in his capacity as the WD Trustee of the WD Trust,<br><br>                                                        Plaintiff,<br><br>vs.<br><br>Canadian Pacific Railway Limited, Canadian Pacific Railway Company, Soo Line Corporation, and Soo Line Railroad Company,<br><br>                                                        Defendants. | Case No. 1:16-cv-00074 |

**ORDER DENYING MOTION TO APPLY THE JUDGMENT REDUCTION PROVISIONS PURSUANT TO THE MMA PLAN AND CONFIRMATION ORDER AND GRANTING, IN PART, AND DENYING, IN PART, MOTION FOR PREJUDGMENT INTEREST AND FULL VALUE OF THE CRUDE OIL**

**INTRODUCTION**

[¶ 1]    THIS MATTER comes before the Court on two Motions. First, the Defendants, Canadian Pacific Railway Limited and Soo Line Railroad Company (collectively, "CP"), filed a Motion to Apply Judgment Reduction Provisions Pursuant to the MMA Plan and Confirmation Order[1] filed on March 7, 2023. Doc. No. 441. The Plaintiff, Joe R. Whatley, Jr. ("Whatley"), filed a Response on March 28, 2023. Doc. No. 454. CP filed a Reply on April 14, 2023. Doc. No. 456. Second, Whatley filed a Motion for Prejudgment Interest and Full Value of Crude Oil on March 7, 2023. Doc. No. 443. CP filed a Response on March 28, 2023. Doc. No. 451. Whatley filed a Reply on April 14, 2023. Doc. No. 455.

---

[1] This Plan and Confirmation Order was entered in the bankruptcy proceedings of Montreal Maine & Atlantic Railway, Ltd, otherwise known as "MMA." See Doc. No. 1-1.

- 1 -

[¶ 2]    For the reasons set forth below, CP's Motion to Apply Judgment reduction Provisions Pursuant to the MMA Plan and Confirmation Order is **DENIED** and Whatley's Motion for Prejudgment Interest and Full Value of Crude Oil is **GRANTED, in part, and DENIED, in part**.

## DISCUSSION

   I.    **CP's Motion to Apply Judgment Reduction Provisions Pursuant to the MMA Plan and Confirmation Order**

[¶ 3]    CP asks this Court to apply a judgment reduction provision pursuant to the District of Maine's Bankruptcy Court's plan and confirmation order (Doc. No. 1-2, p. 38, ¶ 64(c)) and reduce the judgment amount in this matter to zero. In essence, CP request this Court enforce the Bankruptcy Court's provision that may or may not bar Whatley from collecting the judgment amount entered in this case. Whatley argues the judgment reduction provision is inapplicable in this case.

[¶ 4]    This Court will not address this issue because it is a matter properly reserved to the Bankruptcy Court. The matters before this Court required it to determine (1) CP's liability under the Carmack Amendment and (2) the amount of damages it owes for the liability. The Court concluded CP is liable under the Carmack Amendment but Whatley's damages are limited to the value of the crude oil. Doc. No. 421. Now, CP wants this Court to enforce an order provision from an out-of-district Bankruptcy Court that CP claims requires a reduction of this Court's judgment to zero. This Court concludes the District of Maine Bankruptcy Court is the proper jurisdiction to determine the scope of its own order and whether it acts as a bar to Whatley collecting on the judgment in this case from CP. See 28 U.S.C. § 1334(e) (explaining the district court in which the bankruptcy proceeding is pending has "exclusive jurisdiction" over the debtor's property, wherever located); 11 U.S.C. § 105(a) (giving the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy

Code]"). Therefore, this Court refrains from enforcing the judgment reduction provision of the District of Maine Bankruptcy Court's order in this proceeding.

[¶ 5]   Accordingly, CP's Motion to Apply the Judgment Reduction Provision Pursuant to the MMA Plan and Confirmation Order is **DENIED without prejudice.** CP may raise this issue in the Bankruptcy Court in the District of Maine.

## II.    Whatley's Motion for Prejudgment Interest and Full Value of Crude Oil

### a.  Value of the Crude Oil

[¶ 6]   The Parties have stipulated the value of the lost cargo is one of three figures: (1) $4,346,429.00; (2) $3,950,464.00; or (3) 4,072,369.00.[2] Doc. No. 439, ¶ 2. Whatley argues it is entitled to option (1) – $4,346,429.00, claiming CP is not entitled to an "offset" of $395,965.00 for the freight charges. CP argues Whatley's damages for lost cargo is option (2) – $3,950,464.00 because the additional $395,965.00 is non-recoverable freight charges. The Court must first determine whether the freight charges are recoverable in this case. Under the "ordinary measure of damages" rule, the Court concludes freight charges are not recoverable here.

[¶ 7]   It is undisputed the "ordinary measure of damages" rule governs this dispute and the Court agrees it is a reasonable method of determining recoverable damages in Carmack Amendment cases such as this. The purpose of this rule is to "put the shipper back in the position it would have been in had the carrier properly performed, including recovery for lost profits." Am. Nat'l Fire Ins. Co. v. Yellow Freight Systems, Inc., 325 F.3d 924, 931-32 (7th Cir. 2003). In deciding what the "ordinary measure of damages" is, the Supreme Court has indicated courts are to look to "the

---

[2] According to the Stipulation, this is Whatley's alternative contention, which "would be the value of the Lost Cargo if the Court finds that CP is entitled to an offset or reduction for unpaid freight charges for the 63 damaged or destroyed tank cars but not for MMA's division of freight charges. The Court has concluded the freight charges are non-recoverable and this alternative contention was not adequately briefed by the Parties.

difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive." Gulf, Colorado & Santa Fe Ry. Co. v. Texas Packing Co., 244 U.S 31, 37 (1917); see also Am. Nat'l Fire Ins., 325 F.3d at 931-32 (quoting the same). "When this measure of damages is employed, the shipper is still obligated to pay freight to the carrier and will not be allowed to recover freight in his damages." Am. Nat'l Ins. Co., 325 F.3d at 932. The reason is simple, when a shipper has not paid the freight costs at the time the cargo was lost, the shipper should not recoup fees that have not been paid. Id. ("By receiving the market rate of the goods had they been undamaged less the market rate received in their damaged condition, the shipper has received exactly what he would have received had the carrier performed non-negligently.").

[¶ 8]   The record establishes World Fuel's (assignor of claims to assignee Whatley) Freight Claim Submission Form indicated the freight was sold "FOB destination." Doc. No. 1-10, p. 3. The Supreme Court has noted, "'F.o.b. destination' means 'the seller must at his own expense and risk transport the goods to [the destination] and there tender delivery of them.'" Burlington Northern & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 604, n.2 (2009) (quoting U.C.C. § 2-319(1)(b)(2001)). Accordingly, the freight costs were born by World Fuel and Irving and at their risk. Permitting Whatley to recover them now would render Whatley more whole than the claims allow. Accordingly, the ordinary market value of the oil was $3,950,464.00 and that amount is recoverable by Whatley.[3]

---

[3] Whatley argues non-related facts justify recovery of the freight charges, such as damaged and destroyed tank cars, environmental contamination causing World Fuel to face two environmental orders from the Quebec Minister of Environment, and World Fuel's $110 million settlement for property damage, personal injury, and wrongful death claims. Doc. No. 444, p. 11. Whatley cannot bootstrap additional damages for the freight charges because World Fuel had additional expenses it had to pay that are not subject to this action. The question is whether assessing freight charges

b. **Prejudgment Interest**

[¶ 9] Having established the damages awardable in this case, the Court now turns to whether prejudgment interest should be awarded. Plaintiffs argue the Court should exercise its discretion and award prejudgment interest at the "prime rate" compounded annually to compensate Whatley for their total losses. CP argues the Court should exercise its discretion and deny Whatley's request for prejudgment interest because (1) World Fuel's losses were reimbursed through insurance; (2) the Court rejected Whatley's attempt to recover third-party settlements under the Carmack Amendment; and (3) it would be inequitable to award prejudgment interest because it would punish CP as a non-tortfeasor and result in a windfall to Whatley and award Whatley for delays caused by Whatley and World Fuel. CP argues alternatively that if prejudgment interest is awarded, it is governed by 28 U.S.C. § 1961(a) (providing a statutory rate of interest). The Court agrees prejudgment interest is appropriate in this case and that it should be the rate set out by 28 U.S.C. § 1961(a).

[¶ 10] Prejudgment interest is awarded "to compensate the prevailing party for its true money damages, to encourage settlements, and to deter parties from benefitting from unfairly delaying litigation." United States v. Casino Magic Corp., 384 F.3d 510, 516 (8th Cir. 2004). When a federal statute governs the underlying dispute, prejudgment interest is a question of federal law. Kelley v. Boosalis, 974 F.3d 884, 901 (8th Cir. 2020). As a general rule, a prevailing plaintiff is entitled to prejudgment interest unless exceptional circumstances justify withholding of such an award. Casino Magic Corp., 384 F.3d at 516 ("[G]enerally prejudice interest should be awarded, absent

---

would make Whatley whole or provide excess payments. The Court has concluded the freight charges were assumed by World Fuel and therefore not recoverable here.

exceptional circumstances."). Typical exceptional circumstances include bad faith, an assertion of frivolous claims, and repeated delay tactics. Id.

[¶ 11] There are no exceptional circumstances present in this case. The Court has already addressed the applicability of World Fuel's losses being reimbursed by insurance and concluded that does not prevent Whatley from recovering here. See Doc. No. 421, ¶¶ 28-46 (denying Defendant's request to preclude the Plaintiff's use of the collateral source rule as to the value of the crude oil and requiring Defendant's to pay the entire value of the crude oil). The same reasons apply to prejudgment interest in this case. As to the equity line of arguments proposed by CP, Whatley would not receive a windfall from prejudgment interest because it was validly assigned the claims and the Court has concluded CP must pay the value of the crude oil. As for the delay, this case has been fraught with delays brought on by both sides. CP has thus failed to show extraordinary circumstances that would warrant withholding prejudgment interest in this case.

### c. Calculating Prejudgment Interest

[¶ 12] The Eighth Circuit has endorsed two methods of calculating the prejudgment interest rate. In General Facilities, Inc. v. National Marine Service, Inc., the court held "[a]lthough the average prime rate is not the only possible standard, we cannot say it is unreasonable or an abuse of discretion to follow it as a guide." 664 F.2d 672, 674 (8th Cir. 1981) (per curiam). In Dependahl v. Falsfaff Brewing Corp., the Eighth Circuit noted, "[w]e believe that section 1961 provides useful guidance in the area of prejudgment interest." 653 F.2d 1208, 1219 (8th Cir. 1981). The court reaffirmed this in Mansker v. TMG Life Ins. Co., stating, "[i]n Dependahl, this court concluded that 28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest." 54 F.3d 1322, 1331 (8th Cir. 1995).

[¶ 13]   This Court will apply the interest rate as outlined under 28 U.S.C. § 1961 and approved in both Dependahl and Mansker.[4] Under Section 1961, the Court will calculate the prejudgment interest "from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). Section 1961(b) requires interest to be compounded annually. See also Lanpher v. Metropolitan Life Ins. Co., 2015 WL 4920042, *3 (D. Minn. August 18, 2015) ("Because Section 1961 provides the measure of interest for prejudgment interest, the language of that provision should govern the interest award in this case, as the parties appear to concede.").

[¶ 14]   Judgment was entered originally on February 16, 2023. Doc. No. 440. The Court will look to the date of this original judgment for determining the prejudgment interest rate because judgment has already been entered. The week prior to that, the average 1-year constant maturity Treasury yield as set by the Board of Governors of the Federal Reserve System was 4.87 percent. See Doc. No. 452-3, p. 8 (providing the weekly average for February 10 (the week preceding entry of judgment) for the 1-year constant maturity Treasury yield as 4.87 percent). That rate shall, therefore, be applied as prejudgment interest to the award of damages.

---

[4] There is a significant distinction between the present case and General Facilities. In General Facilities, the district court concluded the applicable prejudgment interest rate (15.75 percent) was based on the average prime rate during the relevant timeframe "as adduced at trial." 664 F.2d at 674. This is an important distinction. If the Court were to indulge Whatley's request, it would require additional briefing to determine the average prime rate. See Doc. No. 444, pp .9-10 (Whatley arguing the Court should first determine whether prejudgment interest applies and then permit additional briefing to determine the average prime rate for the relevant period). As a simple matter of judicial economy, the prime rate is untenable in this protracted litigation.

### d. Accrual Date of Prejudgment Interest

[¶ 15]   Lastly, the Court must determine the date on which to begin the prejudgment interest. Whatley argues it should begin either on the date the cargo was lost—July 6, 2013, or the date of its expected delivery—July 7, 2013. CP argues it should begin on the date the Complaint was filed. The Court agrees with Whatley the accrual date is July 7, 2013.

[¶ 16]   In the Eighth Circuit, it is well-established that "prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued." Am. Nat'l Fire Ins. Co., 325 F.3d at 935. In a similar lost cargo Carmack case, the Southern District of New York held, "the most appropriate date for commencement of prejudgment interest in this case is the date of expected delivery." Atlantic Mut. Ins. Co. v. Napa Transp., Inc., 399 F.Supp.2d 523, 526 (S.D.N.Y. 2005). Relying on Second Circuit precedent, the court reasoned the actual loss suffered did not begin until the date the cargo was expected to be delivered. Id.

[¶ 17]   This Court agrees the date of expected delivery, July 7, 2013, is the appropriate date for beginning the prejudgment interest calculation because it was the date of actual loss as articulated in Atlantic Mut. Ins. Co. The Court recognizes the line of district and bankruptcy court cases cited by CP indicating an award of prejudgment interest accrued at the time the claim was asserted was factually dependent on those cases. See Doc. No. 451, p. 19, n.20 (collecting cases). However, applying the date of expected delivery as the date prejudgment interest accrues is consistent with the Eight Circuit's general rule that prejudgment interest begins on the date of the actual loss, not the date of asserting the claim. See Am. Nat'l Fire Ins. Co., 325 F.3d at 935. Therefore, the accrual date for prejudgment interest is July 7, 2013.

**CONCLUSION**

[¶ 18]  For the foregoing reasons, CP's Motion to Apply Judgment reduction Provisions Pursuant to the MMA Plan and Confirmation Order is **DENIED** and Whatley's Motion for Prejudgment Interest and Full Value of Crude Oil is **GRANTED, in part, and DENIED, in part**. The Clerk of Court is directed to amend the judgment in this case to award Whatley the value of the crude oil at $3,950,464.00 with a prejudgment interest rate to begin on July 7, 2013, at a rate of 4.87 percent compounded annually.

[¶ 19]  **IT IS SO ORDERED.**

DATED January 5, 2023.

Daniel M. Traynor, District Judge
United States District Court